**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MATEO CHIODO ) | CASE NO. | |
| 1510 Patricia Drive ) | | |
| Marysville, Ohio 43040, ) | JUDGE: | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | **COMPLAINT FOR DAMAGES** | |
| ) | **AND INJUNCTIVE RELIEF** | |
| HONDA DEVELOPMENT & ) | | |
| MANUFACTURING OF AMERICA LLC ) | **JURY DEMAND ENDORSED** | |
| 30 Hunter Place ) | **HEREIN** | |
| Bellefontaine, Ohio 43311, ) | | |
| ) | | |
| **Serve Also:** ) | | |
| HONDA DEVELOPMENT & ) | | |
| MANUFACTURING OF AMERICA ) | | |
| LLC, ) | | |
| c/o Corporation Service Company ) | | |
| Registered Agent ) | | |
| 3366 Riverside Drive, Suite 103 ) | | |
| Upper Arlington, Ohio 43221, ) | | |
| ) | | |
| and, ) | | |
| ) | | |
| ADECCO USA, INC. ) | | |
| 30 Hunter Place ) | | |
| Bellefontaine, Ohio 43311, ) | | |
| ) | | |
| **Serve Also:** ) | | |
| ADECCO USA, INC. ) | | |
| c/o CT Corporation System ) | | |
| Registered Agent ) | | |
| 4400 Easton Commons Way, ) | | |
| Suite 125 ) | | |
| Columbus, Ohio 43219 ) | | |
| ) | | |
| Defendants. ) | | |

1

Plaintiff, Mateo Chiodo, by and through undersigned counsel, as his Complaint against Defendants Honda Development & Manufacturing of America LLC ("Honda") and Adecco USA, Inc. ("Adecco") states and avers the following:

**JURISDICTION & VENUE**

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Chiodo is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.* and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

2. All material events alleged in this Complaint occurred in Logan County, Ohio.

3. This Court has supplemental jurisdiction over Chiodo's state law claims pursuant to 28 U.S.C. § 1367 as Chiodo's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. Within 300 days of the conduct alleged below, Chiodo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00270 against Honda and Adecco ("Chiodo EEOC Charge").

6. On or about September 9, 2022, the EEOC issued a Notice of Right to Sue letter to Chiodo regarding the Charges of Discrimination brought by Chiodo against Honda and Adecco in the Chiodo EEOC Charge.

7. Chiodo received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

8. Chiodo has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

9. Chiodo has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

10. Chiodo is a former employee of Honda and Adecco.

11. Honda was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

12. At all times relevant herein, Chiodo was employed by Honda for at least 12 months and had at least 1,250 hours of service with Honda and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

13. Adecco was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

14. At all times relevant herein, Chiodo was employed by Adecco for at least 12 months and had at least 1,250 hours of service with Honda and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

15. Adecco issued Chiodo his regular paychecks.

16. Adecco assigned Chiodo to work at Honda.

17. Honda assigned Chiodo his day-to-day work.

18. Honda supervised Chiodo's day-to-day work.

19. Adecco maintained a supervisory role at Honda to monitor Chiodo's work for Honda.

20. Adecco had authority to discipline Chiodo.

21. Honda had authority to discipline Chiodo.

22. Adecco had authority to fire Chiodo.

23. Honda had authority to fire Chiodo.

24. Chiodo began working for Honda in or around June 2017.

25. Chiodo worked for Honda most recently as a Team Lead.

26. Chiodo was assigned to the Honda facility located at 20 Hunter Place, Bellefontaine, Ohio 43311 ("Facility").

27. Chiodo was assigned to the Honda Facility through Adecco.

28. Adecco is a staffing agency.

29. Chiodo has peripheral neuropathy ("Disability").

30. Due to his Disability, Chiodo had nerve damage that caused Chiodo weakness, numbness, and severe pain in both of Chiodo's feet.

31. As a result of suffering from his Disability, Chiodo is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq.*

32. As a result of suffering from his Disability, Chiodo is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

33. In the alternative, Honda perceived Chiodo as being disabled.

34. In the alternative, Honda perceived that Chiodo's Disability constituted a physical impairment.

35. In the alternative, Honda perceived Chiodo's Disability substantially impaired one or more of his major life activities, including working and walking.

36. In the alternative, Adecco perceived Chiodo as being disabled.

37. In the alternative, Adecco perceived that Chiodo's Disability constituted a physical impairment.

38. In the alternative, Adecco perceived Chiodo's Disability substantially impaired one or more of his major life activities, including working and walking.

39. Despite this actual or perceived disabling condition, Chiodo was still able to perform the essential functions of his job.

40. From February 5, 2021, to May 12, 2021, Chiodo was off work on FMLA and medical leave.

41. In or around April 2021, Eric Daniel, the Adecco on-site manager for Honda, told Chiodo, while he was on FMLA leave, that Chiodo was to be transferred to the Marysville Auto Plant ("First Retaliatory Act").

42. The First Retaliatory Act interfered with Chiodo's FMLA leave because he was contacted while on FMLA leave.

43. The First Retaliatory Act was in retaliation for Chiodo's use of FMLA leave.

44. Upon information and belief, Daniel worked for Adecco.

45. On or about May 12, 2021, Chiodo returned from FMLA leave to his Team Lead position.

46. As of June 21, 2021, Chiodo's Transfer had not yet occurred.

47. On or about June 21, 2022, Chiodo's Disability was becoming increasingly more painful and severe due to the significant amount of walking Chiodo was forced to do for work.

48. On or about June 21, 2022, Chiodo requested a parking spot closer to the building and a three-wheeled bike to travel through the Facility from Gary Hammonds, a Department Manager at Honda ("First Request for Accommodations").

49. Upon information and belief, Hammonds worked for Honda.

50. Hammonds is not disabled.

51. Hammonds did not participate in the decision to hire Chiodo.

52. On or about June 21, 2022, Hammonds denied Chiodo's reasonable First Request for Accommodations.

53. Chiodo's First Request for Accommodations was reasonable because Honda has three-wheeled bikes specifically available for employees to use to get around the Facility more easily and had parking spots closer to the Facility available.

54. One or about June 21, 2021, Honda did not engage in an interactive discussion regarding a reasonable accommodation for Chiodo's Disability.

55. Honda's failure to engage in an interactive discussion regarding a reasonable accommodation for Chiodo's Disability violated the ADA and R.C. § 4112.02 *et seq*.

56. Despite Honda's denial, Chiodo still performed his job duties at the expense of his health.

57. On or about June 23, 2021, Hammonds and Chiodo had a second meeting regarding Chiodo's Disability.

58. On or about June 23, 2021, Chiodo reiterated his First Request for Accommodations and asked about FMLA leave ("Second Request for Accommodations").

59. Hammonds again denied Chiodo's Second Request for Accommodations.

60. On Due to Honda's failure to engage in an interactive discussion regarding Chiodo's First Request for Accommodation and Second Request for Accommodations, Chiodo explained that he had no choice but to step down to a less physically demanding job ("Demotion").

61. The Demotion led to a significant pay cut for Chiodo.

62. On or about June 23, 2021, Chiodo told Hammonds that Hammonds was discriminating against Chiodo based on his Disability.

63. On or about August 16, 2021, Chiodo's Transfer went through and Chiodo was transferred to the Marysville Auto Plant ("Second Retaliatory Act").

64. After the Second Retaliatory Act occurred, Chiodo was still required to park far away from his building.

65. After the Second Retaliatory Act occurred, Chiodo was still required to walk long distances at work.

66. After the Second Retaliatory Act Occurred, Chiodo's pay was lower than he had been paid as a Team Lead.

67. On or about October 19, 2021, Chiodo complained to Daniel about the disability discrimination and retaliation he was facing at Honda.

68. Daniel took no action to prevent, address, or correct the disability discrimination and retaliation Chiodo was experiencing.

69. On or about October 19, 2021, Chiodo complained to Daniel about not being able to get FMLA benefits.

70. Daniel did not help Chiodo pursue FMLA benefits.

71. On or about November 17, 2021, Chiodo filed continuing charges of disability discrimination and retaliation with the EEOC against Honda and Adecco.

72. On or about February 2, 2022, Daniels terminated Chiodo's employment ("Termination").

73. Daniel is not disabled.

74. Daniel did not participate in the decision to hire Chiodo.

75. Chiodo was replaced by Terry Brown.

76. Brown is not disabled.

77. Chiodo was terminated because of his Disability.

78. Chiodo was terminated in retaliation for complaining about the disability discrimination he was facing.

79. Chiodo was terminated in retaliation for filing charges with the EEOC.

80. Honda interfered with Chiodo's rights under the FMLA by failing to advise Chiodo of his FMLA rights and how to pursue them.

81. Adecco interfered with Chiodo's rights under the FMLA by failing to advise Chiodo of his FMLA rights and how to pursue them.

82. Honda has a progressive disciplinary policy ("Discipline Policy").

83. A verbal warning is the lowest level of discipline in the Discipline Policy.

84. Chiodo did not receive a verbal warning before the Termination.

85. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

86. Chiodo did not receive a written warning before the Termination.

87. A termination is the highest level of discipline in the Discipline Policy.

88. Defendants knowingly skipped progressive disciplinary steps in terminating Chiodo.

89. Defendants knowingly terminated Chiodo's employment.

90. Defendants knowingly took an adverse employment action against Chiodo.

91. Defendants knowingly took an adverse action against Chiodo.

92. Defendants intentionally skipped progressive disciplinary steps in terminating Chiodo.

93. Defendants intentionally terminated Chiodo's employment.

94. Defendants intentionally took an adverse employment action against Chiodo.

95. Defendants intentionally took an adverse action against Chiodo.

96. Defendants knew that skipping progressive disciplinary steps in terminating Chiodo would cause Chiodo harm, including economic harm.

97. Defendants knew that terminating Chiodo would cause Chiodo harm, including economic harm.

98. Defendants willfully skipped progressive disciplinary steps in terminating Chiodo.

99. Defendants willfully terminated Chiodo's employment.

100. Defendants willfully took an adverse employment action against Chiodo.

101. Defendants willfully took an adverse action against Chiodo.

102. Defendants terminated Chiodo on or about February 2, 2022.

103. As a direct and proximate result of Honda's conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

104. Chiodo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Defendants treated Chiodo differently than other similarly-situated employees based on his disabling condition.

106. Defendants treated Chiodo differently than other similarly-situated employees based on his perceived disabling condition.

107. On or about February 2, 2022, Defendants terminated Chiodo's employment without just cause.

108. Defendants terminated Chiodo's employment based on his disability.

109. Defendants terminated Chiodo's employment based on his perceived disability.

110. Defendants violated the ADA when it discharged Chiodo based on his disability.

111. Defendants violated the ADA when it discharged Chiodo based on his perceived disability.

112. Defendants violated the ADA by discriminating against Chiodo based on his disabling condition.

113. Defendants violated the ADA by discriminating against Chiodo based on his perceived disabling condition.

114. As a direct and proximate result of Defendants' conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

115. Chiodo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. Defendants treated Chiodo differently than other similarly-situated employees based on his disabling condition.

117. Defendants treated Chiodo differently than other similarly-situated employees based on his perceived disabling condition.

118. On or about February 2, 2022, Honda terminated Chiodo's employment without just cause.

119. Defendants terminated Chiodo's employment based on his disability.

120. Defendants terminated Chiodo's employment based on his perceived disability.

121. Defendants violated R.C. § 4112.02 when it discharged Chiodo based on his disability.

122. Defendants violated R.C. § 4112.02 when it discharged Chiodo based on his perceived disability.

123. Defendants violated R.C. § 4112.02 by discriminating against Chiodo based on his disabling condition.

124. Defendants violated R.C. § 4112.02 by discriminating against Chiodo based on his perceived disabling condition.

125. As a direct and proximate result of Defendants' conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III: FAILURE TO ACCOMMODATE UNDER THE ADA

126. Chiodo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

127. Chiodo informed Honda of his disabling condition.

128. Chiodo requested accommodations from Defendants to assist with his Disability including being allowed to have a three-wheeled bike to travel through his work facilities and having a parking space close to the work facilities.

129. Chiodo's requested accommodations were reasonable.

130. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendants.

131. Defendants failed to engage in the interactive process of determining whether Chiodo needed an accommodation.

132. Defendants failed to provide an accommodation.

133. Defendants violated the ADA by failing to provide Chiodo a reasonable accommodation.

134. As a direct and proximate result of Defendants' conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV: FAILURE TO ACCOMMODATE UNDER R.C. 4112.01 *et seq.*

135. Chiodo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. Chiodo informed Defendants of his disabling condition.

137. Chiodo requested accommodations from Defendants to assist with his Disability including being allowed to have a three-wheeled bike to travel through his work facilities and having a parking space close to the work facilities.

138. Chiodo's requested accommodations were reasonable.

139. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendants.

140. Defendants failed to engage in the interactive process of determining whether Chiodo needed an accommodation.

141. Defendants failed to provide an accommodation.

142. Defendants violated R.C. § 4112.02 by failing to provide Chiodo a reasonable accommodation.

143. As a direct and proximate result of Defendants' conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT V: RETALIATION IN VIOLATION OF THE ADA

144. Chiodo restates each and every prior paragraph of this complaint, as if it were fully restated herein.

145. As a result of Defendants' discriminatory conduct described above, Chiodo complained about the disability discrimination he was experiencing.

146. Subsequent to Chiodo's reporting of disability discrimination to management at Honda and Adecco and filing charges of discrimination with the EEOC, Chiodo was demoted.

147. Subsequent to Chiodo's reporting of disability discrimination to management at Honda and Adecco and filing charges of discrimination with the EEOC, Chiodo was terminated.

148. Defendants' actions were retaliatory in nature based on Chiodo's opposition to the unlawful discriminatory conduct.

149. Pursuant to the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

150. As a direct and proximate result of Defendants' conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

151. Chiodo restates each and every prior paragraph of this complaint, as if it were fully restated herein.

152. As a result of Defendants' discriminatory conduct described above, Chiodo complained about the disability discrimination he was experiencing.

153. Subsequent to Chiodo's reporting of disability discrimination to management at Honda and Adecco and filing charges of discrimination with the EEOC, Chiodo was demoted.

154. Subsequent to Chiodo's reporting of disability discrimination to management at Honda and Adecco and filing charges of discrimination with the EEOC, Chiodo was terminated.

155. Defendants' actions were retaliatory in nature based on Chiodo's opposition to the unlawful discriminatory conduct.

156. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

157. As a direct and proximate result of Defendants' conduct, Chiodo suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

158. Chiodo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

159. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

160. Defendants are covered employers under FMLA.

161. During his employment, Chiodo qualified for FMLA leave.

162. During his employment, Chiodo attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

163. Defendants failed to properly advise Chiodo of his rights under FMLA.

164. Defendants unlawfully interfered with Chiodo's exercise of his rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

165. Defendants act of failing to properly advise Chiodo of his rights under the FMLA violated and interfered with Chiodo's FMLA rights.

166. Defendants violated section 825.300(c)(1) of FMLA and interfered with Chiodo's FMLA rights when Defendants did advise Chiodo of his rights under the FMLA.

167. As a direct and proximate result of Defendants' conduct, Chiodo is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VIII: RETALIATION IN VIOLATION OF FMLA

168. Chiodo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. During his employment, Chiodo utilized FMLA leave.

14

170. After Chiodo utilized his qualified FMLA leave, Defendants retaliated against him.

171. Defendants retaliated against Chiodo by terminating his employment.

172. Defendants willfully retaliated against Chiodo in violation of 29 U.S.C. § 2615(a).

173. As a direct and proximate result of Defendants' wrongful conduct, Chiodo is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Chiodo respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Defendants to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendants to restore Chiodo to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Chiodo for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Chiodo claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax:   (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
          greg.shumaker@spitzlawfirm.com

*Attorneys for Plaintiff Mateo Chiodo*

## JURY DEMAND

Plaintiff Chiodo demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Trisha Breedlove*
>Trisha Breedlove (0095852)
>Gregory T. Shumaker (0095552)